Eno, J.
This is an action of contract in one count on an account annexed for groceries sold to the defendant and delivered to the defendant’s fishing-boat the “Sebastiana C.” on June 18, 1947, and again on July 5, 1947. The defendant’s answer was a general denial and an allegation of payment.
The Court made the following findings of fact:
“This is an action of contract on an account annexed. The plaintiff, Joseph J. Furnari, is a grocer in the City of Gloucester. On June 18, 1947 he delivered groceries and meats of a retail value of $100.30 and on July 5, 1947 of a retail value of $13.03 to the boat ‘Sebastiana C.’ in Gloucester harbor. He brought the groceries and meats aboard himself and left a list of them on the boat. On both occasions the captain, John B. Aiello, and some of the crew were on board.
“The merchandise delivered was ordered by the cook, Andrew Vallario, on both occasions and it has not been paid for.
*148 “The cook had ordered groceries and meats from the plaintiff on twelve other occasions between March 11, 1947 and July 5, 1947 and they were delivered on board by the plaintiff each time.
“Prior to the last two deliveries, the plaintiff, on each occasion was paid by a check on which the drawer appeared as ‘ Sebastiana C. ’ and under that the signature of the defendant, Sebastiana Chianciola, who, it is agreed, is the owner of the boat.
“Capt. Aiello was the skipper of the boat on June 18, 19’47 and July 5,1947 and he instructed the cook to order the groceries and meats. Shortly after June 18, 1947 there was a strike and the merchandise purchased either went bad or disappeared from the boat. After the strike, a new crew took over the boat and refused to pay the bills in question.
“After each trip, the captain sold the fish caught, received the money, and turned it over to the defendant at her office. The captain hired and fired the crew, equipped the boat, decided where it would fish, and had complete control of the operation of the vessel.
“I find that this boat was fishing on the ‘Broken Forty Lay,’ so-called, under the provisions of which the cost of the food is paid for out of the shares of the master and crew, not out of the gross stock. It is generally known in Gloucester that many boats fish on a ‘lay’ basis.
“I find that the plaintiff did not know the defendant and the defendant did not know the plaintiff. The defendant never told the captain that he could buy groceries and meats on her account and the captain had no express or implied power to do so.
“The trips were actually settled by the defendant’s daughter Liberia Chianciola, who acted as the defendant’s bookkeeper, and in each instance she used a part of the crew’s shares to pay the bills. The grocery and meat bills *149 were paid by the checks as above described simply for the convenience of the members of the crew.
“I find, as stated above, that the plaintiff did not know the defendant, that the plaintiff did not know on what lay the boat was fishing and that he did not inquire relative thereto. ’ ’
The report states that “there was evidence as contained in the Court’s ‘Findings and Rulings’ ”.
There also was evidence tending to show the following: The sales slips delivered with the merchandise had on them, “Sold to Boat Sebastiana C.” The page in the plaintiff’s ledger relating to these transactions is headed, “ ‘ Sebastiana C.’ Minie Chianciola, 11 Lookout Street.”
The plaintiff filed sixteen requests for rulings, all of which were granted except the following second request which was denied:
“(2) Where a lien is claimed, facts relating to the lay basis are controlling.”
The trial judge denied this request “as being inapplicable as a lien is not claimed in this case.”
The plaintiff claims to be aggrieved by the denial of this request and also by the allowance of the following requests for rulings filed by the defendant.
“(1) That the master of the vessel, John Aiello, was the owner pro hac vice, and was in effect the charterer of the vessel, and not a mere agent or employee of the owner.”
“ (2) The agreement between the captain and the owner, whereby the captain was to operate the vessel, constituted a contract, and a provision therein that the owner should receive a share of the profits of each fishing trip did not render the owner liable for the expenses of the fishing trip. ’ ’
“ (3) The master shipped as captain of the fishing boat under the ‘broken 40 lay’ with authority to hire, pay and discharge the crew, equip and victual the ship with the privilege of resorting to such fishing grounds and for such a period as he pleased, to sell the fish in *150 any market which he might select and collect the proceeds, which were to be divided among himself, the crew and owner in specified shares, and he was in effect the charterer and not a mere agent or employee of the owner. Adams v. Augustine, 195 Mass. 289, and also Rich v. Jordan, 164 Mass. 127. See also Paine v. Silva, 168 Mass. 432, where it appears that the supplies furnished by the plaintiff were on the personal order of the defendant as owner. ’ ’
“ (4) A mere payment on account of the bill owed by the crew does not constitute an acceptance of liability to pay future bills by the owner.”
“(5) There was no agency, express or implied, between the defendant and the captain, whereby the captain was to order groceries upon the credit of the de - fendant.”
There was a finding for the defendant.
There was no error in the denial of the plaintiff’s second ¡request. This action is one for goods sold and delivered, and, therefore, no question of a lien is involved. This request then was inapplicable to the facts found by the trial judge and is immaterial because of his findings. Bresnick v. Heath, 292 Mass. 293, 298; Strong v. Haverhill Electric Co., 299 Mass. 455; Marquis v. Messier, 303 Mass. 553, 555, 556; Himelfard v. Novadel Agene Gorp., 305 Mass. 446, 447; Home Savings Bank v. Savransky, 307 Mass. 601, 603, 604; Bern v. Boston Consolidated Gas Co., 310 Mass. 651, 653, 654; Dangelo v. Farina, 310 Mass. 758, 759.
Nor can we say that there was any prejudicial error in the allowance of the defendant’s requests. The gist of the findings of the trial judge is that the plaintiff has failed to sustain his burden of proof. Even though it might be said that the trial judge erred in his rulings, this has been rendered harmless by his findings of facts. Freeman v. Robinson, 238, Mass. 449, 451, 452; Caruso v. Shalit, 282 Mass. 196; Gibbons v. Denoncourt, 297 Mass. 448; Cameron v. Buckley, 299 Mass. 432; Rathgeber v. Kelley, 299 Mass. 444, *151 446. Some of these requests were for findings of facts, although entitled as rulings of law, and their allowance as such is not reviewable. See Gibbons v. Denoncourt, 297 Mass. 448, 457; Gosselin v. Silver, 301 Mass. 481, 482. Since there was no reversible error the report is to be dismissed.